Thomas H. Allen, State Bar #11160
Khaled Tarazi, State Bar #32446
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: tallen@allenbarneslaw.com
       ktarazi@allenbarneslaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CHAPTER 11 |
| JESSIE PAUL OGLE, | Case No. 2:14-bk-11428-GBN |
| Debtor. | **DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION DATED MAY 16, 2017** |

## <u>ARTICLE 1 – INTRODUCTION</u>

Jessie Paul Ogle, debtor-in-possession in the above captioned Chapter 11 Case, hereby files this *Debtor's Second Amended Plan of Reorganization Dated May 16, 2017*. In addition to reviewing this Plan, all creditors and parties in interest are encouraged to consult the Disclosure Statement before voting to accept or reject this Plan. **NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

# TABLE OF CONTENTS

**ARTICLE 1 – INTRODUCTION** ........................................................................ **i**

**ARTICLE 2 – DEFINITIONS** ....................................................................... **- 1 -**

    **2.1**     **AB&J** ................................................................................. **- 1 -**

    **2.2**     **Administrative Claim.** .......................................... **- 1 -**

    **2.3**     **Allowed Claim.** ...................................................... **- 1 -**

    **2.4**     **ADOR.** ................................................................... **- 2 -**

    **2.5**     **Amelia Property.** ................................................. **- 2 -**

    **2.6**     **Ballot.** ................................................................. **- 2 -**

    **2.7**     **Bankruptcy Case or Case.** ................................ **- 2 -**

    **2.8**     **Bankruptcy Code or Code.** ............................... **- 2 -**

    **2.9**     **Bankruptcy Court or Court.** ............................ **- 2 -**

    **2.10**     **Bankruptcy Rules or Rules.** ............................ **- 2 -**

    **2.11**     **BofA.** .................................................................. **- 3 -**

    **2.12**     **Business Day.** .................................................... **- 3 -**

    **2.13**     **Chapter 11 Professionals.** ............................... **- 3 -**

    **2.14**     **Claim.** ................................................................. **- 3 -**

    **2.15**     **Claimant.** ........................................................... **- 3 -**

    **2.16**     **Class.** ................................................................. **- 3 -**

    **2.17**     **Confirmation Date.** .......................................... **- 3 -**

    **2.18**     **Confirmation Hearing.** ..................................... **- 3 -**

    **2.19**     **Confirmation Order.** ........................................ **- 3 -**

    **2.20**     **Creditor.** ............................................................ **- 3 -**

    **2.21**     **Debtor.** ............................................................... **- 3 -**

    **2.22**     **Disclosure Statement.** ...................................... **- 3 -**

    **2.23**     **Disputed Claim.** ............................................... **- 4 -**

    **2.24**     **Effective Date.** .................................................. **- 4 -**

    **2.25**     **Estate.** ................................................................ **- 4 -**

| | | | |
|---|---|---|---|
| 1 | 2.26 | **Executory Contract.** | - 4 - |
| 2 | 2.27 | **Final Bar Date.** | - 4 - |
| 3 | 2.28 | **Final Decree.** | - 4 - |
| 4 | 2.29 | **Final Order.** | - 4 - |
| 5 | 2.30 | **General Unsecured Claim.** | - 4 - |
| 6 | 2.31 | **Impaired.** | - 5 - |
| 7 | 2.32 | **Initial Bar Date.** | - 5 - |
| 8 | 2.33 | **Initial Payment Date.** | - 5 - |
| 9 | 2.34 | **Laredo Property.** | - 5 - |
| 10 | 2.35 | **Lewis Property.** | - 5 - |
| 11 | 2.36 | **Minton Property.** | - 5 - |
| 12 | 2.37 | **Person.** | - 5 - |
| 13 | 2.38 | **Petition Date.** | - 5 - |
| 14 | 2.39 | **Plan.** | - 5 - |
| 15 | 2.40 | **Priority Tax Claim.** | - 5 - |
| 16 | 2.41 | **Professional Fees.** | - 6 - |
| 17 | 2.42 | **Proof of Claims Bar Date.** | - 6 - |
| 18 | 2.43 | **Property.** | - 6 - |
| 19 | 2.44 | **Secured Claim.** | - 6 - |
| 20 | 2.45 | **Secured Creditor.** | - 6 - |
| 21 | 2.46 | **Unsecured Claim.** | - 6 - |
| 22 | 2.47 | **Unsecured Creditor.** | - 7 - |
| 23 | **ARTICLE 3 – IMPORTANT DATES & DEADLINES** | | - 7 - |
| 24 | 3.1 | **Initial Bar Date.** | - 7 - |
| 25 | 3.2 | **Final Bar Date.** | - 7 - |
| 26 | 3.3 | **Claims Objection Deadline.** | - 8 - |
| 27 | 3.4 | **Deadline for Assumption or Rejection of Executory Contracts.** | - 8 - |
| 28 | **ARTICLE 4 - CLASSIFICATION AND TREATMENT OF CLAIMS** | | - 8 - |

4.1    Class I - Administrative Claims.    - 8 -

4.2    Class II – Priority Claims.    - 9 -

4.2.1    Class II(a) – Priority Tax Claim of Arizona Department of Revenue.    - 9 -

4.2.2    Class II(b) - Priority Tax Claim of Internal Revenue Service.    - 10 -

4.3    Class III – Secured Claims.    - 10 -

4.3.1    Class III(a) – Secured Claims of Bank of America.    - 11 -

4.3.2    Class III(b) – Secured Claim of Nationstar Mortgage, LLC.    - 11 -

4.3.3    Class III(c) – Secured Claim of Ditech.    - 12 -

4.3.4    Class III(d) – Secured Claim of Ditech.    - 12 -

4.3.5    Class III(e) – Secured Claim of Polec Creditors.    - 12 -

4.3.6    Class III(f) – Secured Claim of Van Curen/King Creditors.    - 13 -

4.4    Class IV – General Unsecured Creditors.    - 13 -

ARTICLE 5 - PLAN IMPLEMENTATION    - 14 -

ARTICLE 6 - VOTING PROCEDURE    - 14 -

ARTICLE 7 - BINDING EFFECT OF PLAN    - 14 -

ARTICLE 8 - EFFECT OF CONFIRMATION    - 14 -

ARTICLE 9 - MODIFICATION OF PLAN    - 15 -

9.1    Pre-Confirmation.    - 15 -

9.2    Post-Confirmation.    - 15 -

9.3    Effect.    - 15 -

ARTICLE 10 - RETENTION OF JURISDICTION    - 16 -

ARTICLE 11 - RETENTION AND PROSECUTION OF CLAIMS    - 16 -

11.1    Preservation of Debtor's Claims, Demands, and Causes of Action.    - 16 -

11.2    Procedure for Determination of Claims.    - 17 -

11.2.1 Disputed Claims.    - 17 -

11.2.2 Treatment of Contingent Claims.    - 17 -

ARTICLE 12 - PROVISIONS GOVERNING DISTRIBUTIONS    - 17 -

12.1    Distributions by the Debtor.    - 17 -

| | | |
|---|---|---|
| **12.2** | **Date of Distributions.** | **- 17 -** |
| **12.3** | **Delivery of Distributions.** | **- 18 -** |
| **12.4** | **Means of Payment.** | **- 18 -** |
| **12.5** | **Setoff.** | **- 18 -** |
| **ARTICLE 13 - GENERAL PROVISIONS** | | **- 19 -** |
| **13.1** | **Extension of Payment Dates.** | **- 19 -** |
| **13.2** | **Notices.** | **- 19 -** |
| **13.3** | **Default.** | **- 19 -** |
| **13.4** | **Closure of the Case.** | **- 19 -** |
| **13.5** | **Effect of Appeal.** | **- 19 -** |
| **13.6** | **Exculpation and Limitation of Liability.** | **- 20 -** |
| **13.7** | **General Injunction.** | **- 20 -** |
| **13.8** | **Interest.** | **- 20 -** |
| **13.9** | **Additional Assurances.** | **- 21 -** |
| **13.10** | **Confirmation by Non-Acceptance Method.** | **- 21 -** |
| **13.11** | **Vesting.** | **- 21 -** |
| **13.12** | **Successors and Assigns.** | **- 21 -** |
| **13.13** | **Withdrawal of Plan.** | **- 21 -** |
| **13.14** | **Severability and Reformation.** | **- 21 -** |
| **13.15** | **Prohibition Against Prepayment Penalties.** | **- 22 -** |
| **13.16** | **Payment of Statutory Fees and Filing of Quarterly Reports.** | **- 22 -** |
| **13.17** | **Governing Law.** | **- 22 -** |
| **13.18** | **Special Tax Issues.** | **- 22 -** |
| **13.19** | **Conflicts Between Plan and Confirmation Order.** | **- 22 -** |

## **ARTICLE 2 – DEFINITIONS**

**Rules of Construction.**  The following terms shall have the meanings specified below when used in this Plan.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, the feminine, and the neutral.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, schedule to, or exhibit to the Plan.  The headings in the Plan are for convenience only and shall not limit or otherwise affect the provisions of the Plan.  The rules of construction contained in Bankruptcy Code § 102 shall apply to the construction of the Plan, and unless specifically modified herein, terms that are defined by the Bankruptcy Code shall have the same meanings defined by the Code.  All terms not specifically defined by this Plan shall have the meaning designated in the Bankruptcy Code, or, if not defined therein, their ordinary meanings.  These definitions are a substantial and operative part of the Plan.

### 2.1    **AB&J**

This term means Allen Barnes & Jones, PLC.

### 2.2    **Administrative Claim.**

This term means every cost or expense of administration of this Case allowed under Code § 503(b) and referred to in Code § 507(a)(1), including, without limitation: a) any actual and necessary expense of preserving the estate as approved by the Bankruptcy Court; b) all Professional Fees; and c) all fees and charges assessed against the Debtor's estate under 28 U.S.C. § 1930.

### 2.3    **Allowed Claim.**

This term means every Claim: (a) (i) as to which a proof of such Claim has been timely filed pursuant to Sections 3.1 or 3.2 below, or (ii) which the Debtor has scheduled in his Schedules (including any amendments thereto) as liquidated in amount, not contingent, and undisputed; and in either event:  (b) (i) as to which no objection to the allowance of such Claim

has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to which the order allowing such Claim has become a Final Order. The term "Allowed Claim" may be used throughout the Plan with each of the various Creditors' Claims or Classes of those Claims (*e.g.*, "Allowed Administrative Claims" or "Allowed Secured Claims") to signify that such Claims are, will be, or must be Allowed Claims to qualify for certain treatment under the Plan.

**2.4    ADOR.**

This term means the Arizona Department of Revenue.

**2.5    Amelia Property.**

This term means the Debtor's real property located at 8502 E. Amelia Ave., Scottsdale, AZ 85251.

**2.6    Ballot.**

This term means the Ballot for accepting or rejecting the Plan, which will be distributed to holders of Claims in Classes that are Impaired and entitled to vote on this Plan.

**2.7    Bankruptcy Case or Case.**

This term means bankruptcy case No. 2:14-bk-11428-GBN.

**2.8    Bankruptcy Code or Code.**

These terms mean Title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et seq</u>., as now existing or hereafter amended during this Case.

**2.9    Bankruptcy Court or Court.**

These terms mean the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Case, including the United States District for the District of Arizona to the extent that the reference of all or part of the Case is withdrawn.

**2.10    Bankruptcy Rules or Rules.**

These terms mean the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Case.

/ / /

**2.11    BofA.**

This term means Bank of America, N.A.

**2.12    Business Day.**

This term means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

**2.13    Chapter 11 Professionals.**

This term means all professionals employed by the Estate under Bankruptcy Code § 327.

**2.14    Claim.**

This term means "claim" as defined in Bankruptcy Code § 101(5).

**2.15    Claimant.**

This term means the holder of a Claim.

**2.16    Class.**

This term means each of the categories of claims described in Article 4 of the Plan.

**2.17    Confirmation Date.**

This term means the date on which the Bankruptcy Court enters the Confirmation Order.

**2.18    Confirmation Hearing.**

This term means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Bankruptcy Code § 1128, including any adjournment or continuation of that hearing from time to time.

**2.19    Confirmation Order.**

This term means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

**2.20    Creditor.**

This term means "creditor" as defined in Bankruptcy Code § 101(10).

**2.21    Debtor.**

This term means Jessie Paul Ogle.

**2.22    Disclosure Statement.**

This term means the Debtor's *First Amended Disclosure Statement Dated May 16, 2017,*

presented by the Debtor with respect to the Plan, in its present form or as it may be altered, amended, or modified.

**2.23 <u>Disputed Claim.</u>**

This term means every Claim: a) that is scheduled by the Debtor as disputed, contingent, or unliquidated; or b) that is not an Allowed Claim. Where performance is to be rendered under the Plan to any Creditor in respect to a Disputed Claim, such performance shall not be due (notwithstanding the occurrence of the Effective Date for all other purposes and legal effects) unless and until such Disputed Claim becomes, wholly or in part, an Allowed Claim.

**2.24 <u>Effective Date.</u>**

This term means the thirtieth day that occurs after the Confirmation Date.

**2.25 <u>Estate.</u>**

This term means the Debtor's bankruptcy estate created under Bankruptcy Code § 541.

**2.26 <u>Executory Contract.</u>**

This term means every unexpired lease and other contract that is subject to being assumed or rejected under Bankruptcy Code § 365.

**2.27 <u>Final Bar Date</u>.**

This term means the thirtieth day that occurs after the Effective Date.

**2.28 <u>Final Decree</u>.**

This term means a Final Order showing that the Plan has been fully administered.

**2.29 <u>Final Order.</u>**

This term means an order or judgment of the Court that a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or hearing for certiorari is pending, or b) if appealed from, shall have been affirmed and no further hearing, appeal, or petition for certiorari can be taken or granted.

**2.30 <u>General Unsecured Claim.</u>**

This term means every Unsecured Claim against the Debtor (including, but not limited to, every such Claim arising from the rejection of an Executory Contract, and Unsecured Claims

of Creditors with Claims solely against the Debtor) that will be classified and paid under the Plan as the Plan provides for Class IV Claims.

**2.31** **Impaired.**

This term means "impaired" as defined in Bankruptcy Code § 1124.

**2.32** **Initial Bar Date.**

This term means the day prior to the date of the first hearing on the Disclosure Statement.

**2.33** **Initial Payment Date.**

This term means the first calendar day of the month that occurs eleven (11) months after the Effective Date.

**2.34** **Laredo Property.**

This term means the Debtor's real property located at 1458 E. Laredo St., Chandler, AZ 85225.

**2.35** **Lewis Property.**

This term means the Debtor's real property located at 4028 E. Lewis Dr., Phoenix, AZ 85008.

**2.36** **Minton Property.**

This term means the Debtor's real property located at 680 W. Minton Dr., Tempe, AZ 85282.

**2.37** **Person.**

This term means "person" as defined in Bankruptcy Code § 101(41).

**2.38** **Petition Date.**

This term means July 24, 2014, the filing date of the Debtor's voluntary Chapter 11 petition.

**2.39** **Plan.**

This term means this *Debtor's Second Amended Plan of Reorganization Dated May 16, 2017*, and every amendment to or modification thereof, if any.

**2.40** **Priority Tax Claim.**

Any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**2.41  Professional Fees.**

This term means any of the interim and final professional fees and expenses charged by the Chapter 11 Professionals.

**2.42  Proof of Claims Bar Date.**

This means any deadline fixed by the Bankruptcy Court for the filing of claims in the Bankruptcy Case (except for claims arising out of the rejection of an executory contract or an unexpired lease).

**2.43  Property.**

This term means, with respect to the Debtor, all rights, causes of action, all of the right, title and interest in and to Property (real or personal, tangible or intangible, legal or equitable, liquidated or unliquidated) of whatever type or nature, owned by the Debtor as of the Effective Date, together with Property subsequently acquired by the Debtor, and including, but not limited to, Property as defined in Bankruptcy Code § 541.

**2.44  Secured Claim.**

This term means every Claim or portion thereof that is asserted by a Creditor holding such Claim to be secured by a lien, security interest, or assignment encumbering Property in which the Debtor has an interest; provided, however, that such Claim shall be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such Claim against such Property.

**2.45  Secured Creditor.**

This term means every Creditor that asserts a Secured Claim in the Bankruptcy Case.

**2.46  Unsecured Claim.**

This term means all Claims asserted by Creditors of the Debtor, including deficiency Claims, dissolution Claims and Claims arising out of the rejection of Executory Contracts, other than Secured Claims, Administrative Claims, and Priority Tax Claims.

**2.47    Unsecured Creditor.**

This term means every Creditor that asserts an Unsecured Claim in the Bankruptcy Case.

**ARTICLE 3 – IMPORTANT DATES & DEADLINES**

**3.1    Initial Bar Date.**

The Court originally set a hearing for _____ at 230 N. First Avenue, Sixth Floor, Courtroom 602, Phoenix, Arizona, to consider the adequacy of the Disclosure Statement and set the day prior to such hearing as the Initial Bar Date for filing proofs of Claim. For eligibility as Allowed Claims, proofs of Claim must be filed for:

a) Claims not listed in the Schedules of Assets and Liabilities, as may be amended from time to time;

b) Claims that are listed in the Schedules of Assets and Liabilities as disputed, contingent, or unliquidated;

c) Claims that differ in any respect from those listed in the Schedules of Assets and Liabilities (including, without limitation, the assertion of any right to a setoff under Code § 553 or otherwise);

d) Administrative Claims arising prior to the Initial Bar Date, except for Professional Fees; and

e) Claims arising from the Debtor's rejection of an Executory Contract that occurs prior to the Bar Date.

Any Person or entity asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for payment thereof prior to Initial Bar Date shall be deemed to have waived its Claim, and the Claim will be disallowed and forever barred.

**3.2    Final Bar Date.**

Applications for allowance and payment of a) Administrative Claims that arise after the Initial Bar Date b) Professional Fees incurred prior to the Confirmation Date, or c) Claims resulting from the Debtor's rejection of Executory Contracts after the Initial Bar Date must be filed no later than the Final Bar Date. Any Person asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for allowance and payment thereof shall be deemed to have waived its Claim, and the Claim will be disallowed. Any Professional Fees incurred after the Confirmation Date shall be payable in the normal course

{00009294 2}

- 7 -

of the Debtor's affairs without the need to seek or obtain Bankruptcy Court approval.

### 3.3 Claims Objection Deadline.

On or before the sixtieth day after the Effective Date, the Debtor or any party in interest may file with the Bankruptcy Court, serving a copy upon Debtor's counsel, if necessary, an objection to any application for approval of an Administrative Claim or proof of Claim filed, or deemed filed herein.

### 3.4 Deadline for Assumption or Rejection of Executory Contracts.

Prior to the Confirmation Date, the Debtor will file motions to assume or reject all Executory Contracts. Any Executory Contract not assumed prior to the Confirmation Date will be deemed rejected.

### ARTICLE 4 - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan defines various Classes of Claims and provides for their treatment. This Plan deals with all Claims against the Debtor of whatever character. Only Allowed Claims are entitled to receive payments under the Plan. In accordance with Bankruptcy Code §§ 1122 and 1123, all Claims against the Debtor or the Estate are classified and will receive treatment as follows:

### 4.1 Class I - Administrative Claims.

Class I consists of the allowed Administrative Claims for actual and necessary costs and expenses of administration entitled to priority under Bankruptcy Code §§ 503(b) and 507(a)(1). This Class includes, without limitation, post-petition tax Claims of the IRS, ADOR, and Maricopa County; the Debtor's attorneys' fees; and fees due the United States Trustee, if any. AB&J has not yet filed applications for attorneys' fees in this case. AB&J received a retainer in the amount of $15,000.00 from a third party source, which is held in the firm's trust account. The Debtor intends to dispute any and all outstanding fees of C&P. While Plan litigation is possible, at this time the Debtor anticipates that AB&J will not accrue significant attorneys' fees and costs in pursing confirmation of the Plan. The holders of Allowed Class I Claims shall be paid in full on the Effective Date of the Plan or upon such other terms as the Debtor and the holders of Allowed Class I Claims agree. Class I Claims are unimpaired.

**4.2**     **Class II – Priority Claims.**

Class II consists of all Claims which are entitled to priority treatment pursuant to Bankruptcy Code § 507(a). Each holder of a Priority Claim in Class II is considered to be in its own separate subclass within Class II, and each such subclass is deemed to be a separate Class for purposes of the Plan. Class II consists of various subclasses of asserted priority Creditor Claims. Unless otherwise specified, holders of Allowed Priority Claims in any of the Class II subclasses shall receive payment in full within five years of the Petition Date. The first payment will be due on the Effective Date. The interest rate paid to Allowed Class II Claims shall be four percent (4.0%) per annum from the Effective Date.

**4.2.1**     **Class II(a) – Priority Tax Claim of Arizona Department of Revenue.**

Class II(a) consists of any Allowed Priority Claim of the Arizona Department of Revenue ("ADOR") relating to individual income taxes due by the Debtor. The Allowed Class II(a) Claim is in the total amount of $1,477.04. The interest rate paid to the Allowed Class II(a) Claim shall be four percent (4.0%) per annum. The holder of the Allowed Class II(a) Claim shall receive payment of the Allowed Class II(a) Claim in full, in thirty six equal monthly payments of $43.61 beginning on the Effective Date. The ADOR also asserts a General Unsecured Claim in the amount of $4,401.49, which shall be treated and paid as an Allowed Class IV General Unsecured Claim. No prepayment penalty shall pertain to the Class II(a) Claim.

If the Debtor fails to comply with the provisions of the Plan with respect to the liability owed to the ADOR, which includes but is not limited to, the failure to make full and timely payments, such failure shall constitute a default under the Plan. If the Debtor fails to cure the default within 30 days after written notice of the default from the ADOR or its agents, the entire balance due to the ADOR shall be immediately due and owing. In the event of a default, the ADOR may enforce the entire amount of its Claim, exercise any and all rights and remedies under applicable non-bankruptcy law, which include, but are not limited to, state tax collection procedures and any other such relief as may be deemed appropriate by the Bankruptcy Court. Class II(a) is Impaired.

### 4.2.2   Class II(b) - Priority Tax Claim of Internal Revenue Service.

Class II(b) consists of the Allowed Priority Claim of the Internal Revenue Service ("IRS") relating to individual income taxes due by the Debtor. The Allowed Class II(b) Claim is in the total amount of $27,539.99. Allowed Class II(b) Claims shall be paid with interest at the statutory rate set forth in I.R.C. §§ 6621 and 6622 that is in effect during the month the Plan is Confirmed (currently 4.0% compounded daily). The holder of the Allowed Class II(b) Claim shall receive payment of the Allowed Class II(b) Claim in full, in thirty six equal monthly payments of $813.09 beginning on the Effective Date. The IRS also asserts a General Unsecured Claim in the amount of $9,705.92, which shall be treated and paid as an Allowed Class IV General Unsecured Claim. No prepayment penalty shall pertain to the Class II(b) Claim. Any alleged remaining unpaid amount for the Class II(b) Claim not otherwise receiving treatment in this Plan, including, without limitation, any additional claims for interest or penalties, shall be enjoined and discharged by the Plan.

In the event the Debtor defaults on any payment due to the holder of the Class II(b) Claim as required under the confirmed Plan, and in the event the Debtor fails to cure said default within thirty days after written notice of the default is mailed to the Debtor and the Debtor's attorneys, the entire imposed liability together with any unpaid current liabilities, shall become due and payable immediately. The IRS may collect unpaid liabilities that become due as a result of the default through the administrative collection provision or judicial remedies as set forth in the Internal Revenue Code. The IRS shall not be required to seek a modification from the automatic stay to collect any tax liabilities from property that has revested with the Debtor. Class II(b) is Impaired.

### 4.3   Class III – Secured Claims.

Class III consists of various subclasses of asserted Secured Creditor Claims. Each holder of a Secured Claim in Class III is considered to be in its own separate subclass within Class III, and each such subclass is deemed to be a separate Class for purposes of the Plan. Unless otherwise specified below, holders of Allowed Secured Claims in any of the Class III subclasses shall receive full payment of the amount of their Allowed Secured Claims. Any of

the Debtor's defaults under loan documents with the Allowed Secured Claimants shall be deemed cured as of the Effective Date and to the extent such loan documents provide for default resulting from the Debtor's bankruptcy filings, such default shall not be enforceable. Notwithstanding any pre-bankruptcy agreements with Class III Claimants, the Debtor's statement of the value of each Secured Claim shall be final unless a Creditor objects to the Debtor's value prior to the confirmation of the Plan. Unless otherwise specified herein or in an order entered by the Bankruptcy Court, holders of Allowed Secured Claims shall retain any existing perfected liens to secure the Debtor's obligations under the Plan. Payments to holders of Allowed Class III Secured Claims will begin on the Effective Date.

### 4.3.1    Class III(a) – Secured Claims of Bank of America.

Class III(a) consists of the Secured Claim of BofA relating to prepetition liens against the Amelia, Laredo, and Lewis Properties. As set forth in Section 3.1 of this Disclosure Statement, during the pendency of the Case, BofA settled litigation with the United States Department of Justice, pursuant to which BofA forgave the debt related to these liens and filed releases of the liens with the Maricopa County Recorder as follows: On October 5, 2015, BofA recorded a certain Deed of Release and Reconveyance at Recording No. 20150715187, releasing its lien against the Amelia Property; on April 5, 2016, BofA recorded a certain Deed of Release and Reconveyance at Recording No. 20160223568, releasing its lien against the Laredo Property; and on April 11, 2013, BofA recorded a certain Deed of Release and Reconveyance at Recording No. 20130326634.

Based upon BofA forgiving the Debtor's debt and releasing the liens in connection with the Amelia, Laredo, and Lewis Properties, any and all Claims of BofA against the Debtor are deemed satisfied and BofA no longer holds any Claims in this Case. Any and all Claims of BofA against the Debtor shall be discharged as of the Effective Date. No prepayment penalty shall pertain to this Claim. Class III(a) is Impaired.

### 4.3.2    Class III(b) – Secured Claim of Nationstar Mortgage, LLC.

Class III(b) consists of the Allowed Secured Claim of Nationstar Mortgage, LLC ("Nationstar") relating to its lien on the Laredo Property. As of the Petition Date, Everbank was

the holder of the Class III(b) Claim and filed Proof of Claim No. 4 in connection therewith. Everbank subsequently assigned its interest in Proof of Claim No. 4 to Nationstar. *See* ECF No. 122. The holder of the Allowed Class III(b) Claim shall receive treatment pursuant to the *Order Regarding Plan Treatment of the First Lien Encumbering Real Property Located at 1458 Laredo St. Chandler, AZ 85226.* No prepayment penalty shall pertain to this Claim. Class III(b) is Impaired.

### 4.3.3 Class III(c) – Secured Claim of Ditech.

Class III(c) consists of the Allowed Secured Claim of Ditech relating to its lien on the Lewis Property in the amount of $356,817.61. The holder of the Allowed Class III(c) Claim shall receive payment of the Allowed Class III(c) Claim in full with four percent (4%) interest per annum, in 360 equal monthly payments of principal and interest in the amount of $1,703.50. The first payment will be due on the Effective Date. Ditech shall retain its lien against the Lewis Property up to the value of the Allowed Secured Claim. No deficiency Claim exists with regard to the Class III(c) Claim and no prepayment penalty shall pertain to this Claim. Class III(c) is Impaired.

### 4.3.4 Class III(d) – Secured Claim of Ditech.

Class III(d) consists of the Allowed Secured Claim of Ditech relating to its lien on the Minton Property in the amount of $303,774.00. The holder of the Allowed Class III(d) Claim shall receive payment of the Allowed Class III(d) Claim in full with four percent (4%) interest per annum, in 360 equal monthly payments of principal and interest in the amount of $1,450.26. The first payment will be due on the Effective Date. Ditech shall retain its lien against the Minton Property up to the value of the Allowed Secured Claim. No deficiency claim exists with regard to the Class III(d) Claim and no prepayment penalty shall pertain to this Claim. Class III(d) is Impaired.

### 4.3.5 Class III(e) – Secured Claim of Polec Creditors.

Class III(e) consists of the Allowed Secured Claim of Polec Holdings, LLC and Thomas D. Polec (collectively, "Polec") relating to their judgment in the amount of $3,976.50 ("Polec Judgment") recorded with the Maricopa County Recorder at Recording Nos.

20130032181 and 20130192760. The holder of the Allowed Class III(e) Claim shall receive payment of the Allowed Class III(e) Claim in full with three percent (3%) interest per annum, in sixty (60) equal monthly payments of principal and interest in the amount of $71.45. Upon completion of payments to Polec, the Debtor may seek an Order from the Court avoiding the lien created by the Polec Judgment, which the Debtor may thereafter file with the Maricopa County Recorder to avoid the Polec Judgment. No prepayment penalty shall pertain to the Class III(e) Claim. Class III(e) is Impaired.

### 4.3.6    Class III(f) – Secured Claim of Van Curen/King Creditors.

Class III(f) consists of the Allowed Secured Claim of William Van Curen and Anthony King relating to their judgment in the amount of $3,337.00 ("Van Curen/King Judgment") recorded with the Maricopa County Recorder at Recording No. 20120964428. The holder of the Allowed Class III(f) Claim shall receive payment of the Allowed Class III(f) Claim in full with three percent (3%) interest per annum, in sixty (60) equal monthly payments of principal and interest in the amount of $59.96. Upon completion of payments to Van Curen and King (who shall collectively be entitled to one Claim), the Debtor may seek an Order from the Court avoiding the lien created by the Van Curen/King Judgment, which the Debtor may thereafter file with the Maricopa County Recorder to avoid the Van Curen/King Judgment. No prepayment penalty shall pertain to the Class III(f) Claim. Class III(f) is Impaired.

### 4.4    Class IV – General Unsecured Creditors.

Class IV consists of all Allowed Unsecured Claims that are not entitled to classification in any other class of claims. Holders of Allowed Class IV Claims shall be paid in full over five years. The Debtor shall make the payments to the holders of Allowed Class IV Claims on the first Business Day that occurs 11 months after the Effective Date ("Initial Payment Date") and every year thereafter for four years. Interest shall accrue on Class IV Claims at the rate of three percent (3%) per annum. If a Class IV Claim is not an Allowed Claim prior to 30 days after the Effective Date, such Class IV Claim holder shall receive payment on the one year payment date that falls after its Class IV Claim becomes an Allowed Claim. Class IV is Impaired.

/ / /

## ARTICLE 5 - PLAN IMPLEMENTATION

The Debtor will implement the Plan upon entry of the Confirmation Order. Upon the Effective Date, or at such other time as specifically provided for in the Plan, Creditors holding Allowed Claims will receive the treatment provided for in the Plan. Creditors must hold Allowed Claims before they will be entitled to their respective treatment.

The Plan will be funded by the Debtor's cash on hand, post-petition income, and post-confirmation income. Unless a party in interest objects to the Debtor's estimate of value of any asset prior to confirmation of the Plan, the value of the assets set forth in the Plan, as amended, shall be determinative.

## ARTICLE 6 - VOTING PROCEDURE

Creditors will vote to accept or reject the Plan. THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS; provided, however, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan and that Creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation.

## ARTICLE 7 - BINDING EFFECT OF PLAN

The provisions of this Plan shall bind the Debtor and any Person or entity holding a Claim against the Debtor or his Estate, whether asserted or not asserted, whether such Person or entity's Claim arose before or after the respective Petition Date or the Effective Date, whether or not the Claim is Impaired under the Plan, and whether or not such Person or entity has accepted or rejected the Plan.

## ARTICLE 8 - EFFECT OF CONFIRMATION

Except as otherwise provided herein, the rights afforded in this Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against the Debtor of any nature whatsoever. All holders of Claims against the Debtor shall be precluded from asserting against

the Debtor, the Estate, or the Properties of the Debtor or the Estate any other or further Claim based upon any omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. This release shall be effective as to each Claim, regardless of whether the Claim is listed on the Debtor's Statements or Schedules filed in this Case, whether a proof of Claim was filed, whether such proof of Claim was withdrawn, whether the Claim is an Allowed Claim, in whole or in part, or whether the holder of the Claim votes to accept or reject this Plan. Upon the Effective Date, all Property of the Estate will vest in the Debtor, who, subject to the obligations set forth in the Plan, may utilize the Property free of any burdens of the Bankruptcy Code and without need to obtain Court approval of his actions. This release is not a discharge and the Debtor is entitled to a discharge only as permitted by Code § 1141(d)(2) and (5).

## ARTICLE 9 - MODIFICATION OF PLAN

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

### 9.1 Pre-Confirmation.

In accordance with Code § 1127(a), the Debtor may propose the modification of the Plan in writing at any time before confirmation, provided that the Plan, as thus modified, meets the requirements of Code §§ 1122 and 1123, and the Debtor complies with Code § 1125.

### 9.2 Post-Confirmation.

In accordance with Code § 1127(b), the Plan also may be modified at any time after confirmation and before its substantial consummation, provided that a) the Plan as modified meets the requirements of Code §§ 1122 and 1123, b) the circumstances then existing justify such modification, and c) the Court confirms the Plan as thus modified under Code § 1129.

### 9.3 Effect.

Every modification of the Plan will supersede the previous version of the Plan as and when each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Debtor or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, or the principles of res judicata or collateral estoppel, with respect to any term or provision contained herein in the event the Plan is not confirmed upon the terms and provisions set forth herein.

## ARTICLE 10 - RETENTION OF JURISDICTION

Notwithstanding the confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Case and this Plan, including, but not limited to all of the following matters:

a) Allowance and payment of any Claims upon any objection thereto (or other appropriate proceedings) by any party in interest entitled to proceed in that manner;

b) Determination and adjudication of any issues that arise out of or relate to a sale of any Property;

c) Determination and adjudication of any disputes that arise regarding the interpretation of any provisions of this Plan;

d) Facilitation of the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate orders regarding this Plan and any provisions thereof;

e) Adjudication of any causes of action or other proceedings presently pending or otherwise referenced in the Plan, including but not limited to any action regarding the initiation, prosecution, enforcement, compromise or settlement of the causes of action in the Estate, and the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b) that may be pertinent to the Case;

f) Enforcement of any provisions of the Plan and any and all documents relating to the Plan;

g) Determination and adjudication of any issues that relate to the Bankruptcy Case, and any governmental unit's Claim with respect to any tax, or any fine, interest or penalty relating to a tax; and

h) Determination of any dispute that may arise regarding the enforcement of any settlement or compromise related to the Case.

## ARTICLE 11 - RETENTION AND PROSECUTION OF CLAIMS

### 11.1 Preservation of Debtor's Claims, Demands, and Causes of Action.

In accordance with Code § 1123(b)(3), all of the Debtor's claims and causes of action will a) survive the entry of the Confirmation Order and the Effective Date, b) not be discharged by the Plan, and c) become and remain part of the Debtor's Assets after the Effective Date.

**11.2    Procedure for Determination of Claims.**

        **11.2.1  Disputed Claims.**

Except as to any Claim that has been Allowed prior to the Effective Date, on or before the sixtieth day after the Effective Date, the Debtor or any party in interest may object to the allowance of a Claim or seek estimation thereof.  See Section 3.3 above.  No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order.  If a Claim is not an Allowed Claim as of the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when a Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.

No Claim will be an Allowed Claim until timely filed objections to its allowance are resolved.  The Court shall resolve all objections at a separate hearing or hearings.  **Any Claims not timely filed or Allowed shall be discharged by the Confirmation Order.**  Only Allowed Claims and interests will receive distributions from the Estate. The Debtor has the right to object to any Claim where it appears that there is some dispute with regard to the Claim as filed.  Unless deemed filed pursuant to Rule 3003(b), the failure to timely file a proof of Claim will result in disallowance of the Claim.

        **11.2.2  Treatment of Contingent Claims.**

Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan.  The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

## ARTICLE 12 - PROVISIONS GOVERNING DISTRIBUTIONS

**12.1    Distributions by the Debtor.**

The Debtor will pay all Allowed Claims according to the Plan.

**12.2    Date of Distributions.**

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy

Court, distributions of cash on account of Allowed Claims as of the Effective Date will be made as of the Effective Date or as otherwise agreed by the respective parties. Authorized distributions to be made in accordance with the Plan will be deemed made as of the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than thirty (30) days after the Effective Date. Distributions on account of Disputed Claims that are Allowed after the Effective Date will be made as provided in the Plan and if not so provided no later than thirty (30) days after entry of a Final Order allowing the Claim.

### 12.3 Delivery of Distributions.

Subject to Rule 9010, distributions and deliveries to each holder of an Allowed Claim will be made at the address of such holder as set forth on the respective proof of Claim as of the Effective Date (or at the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified of a change of address). If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest. The Debtor will be under no obligation to attempt to locate the holder of any Allowed Claim or to recognize any purported transfer or encumbrance on the rights of holders of Allowed Claims after the Confirmation Date. Amounts of undeliverable distributions will be retained by the Debtor until such distributions are claimed. Any Claimant that does not receive a distribution due to it being undeliverable must request payment on or before the first anniversary of the initial date of such payment. After such date, all unclaimed Property will be paid *pro rata* to the Class IV General Unsecured Creditors.

### 12.4 Means of Payment.

Payments made to holders of Allowed Claims pursuant to this Plan will be in United States dollars by checks drawn on the domestic bank selected by the Debtor.

### 12.5 Setoff.

Pursuant to Code § 553 or common law rights of setoff or recoupment, the Debtor will, in the ordinary course of his affairs, set off or assert recoupment against any Allowed Claim, the Claims, rights, and causes of action of any nature that the Debtor may hold against the holder of

such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor of any such Claims, rights, and causes of action that the Debtor may possess against such holder.

## <u>ARTICLE 13 - GENERAL PROVISIONS</u>

**13.1    <u>Extension of Payment Dates.</u>**

If any date set forth in this Plan, including a payment due date, falls on a day that is not a Business Day, then such date will be the next Business Day.

**13.2    <u>Notices.</u>**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

**13.3    <u>Default.</u>**

If the Debtor is unable to perform in accordance with the Plan, then he will be in default. Any Creditor may seek to enforce the Plan.  <u>Before doing so, the Creditor must provide notice to the Debtor specifying the nature of the alleged default and a 30-day period to cure the default.  Any notice must be in writing and sent via certified mail to the Debtor at the address on file with the Clerk of this Court and with a copy sent via certified mail to:</u>

> Thomas H. Allen
> Khaled Tarazi
> ALLEN BARNES & JONES, PLC
> 1850 N. Central Ave., Suite 1150
> Phoenix, Arizona 85004

**13.4    <u>Closure of the Case.</u>**

At such time as the Plan has been fully administered (*i.e.*, when the Plan has been substantially consummated), the Debtor will file an application for entry of a Final Decree, upon the entry of which the Case shall be deemed closed.  Should the Debtor move to reopen the Case for entry of a discharge or an order avoiding a lien as described herein, all fees required to reopen the Case shall be waived.

**13.5    <u>Effect of Appeal.</u>**

In the event of any appeal of the Confirmation Order, and provided that no stay of the effectiveness of such Confirmation Order has been entered, the implementation and

enforcement of the Confirmation Order and the Plan according to their terms shall remain unaffected.

### 13.6 Exculpation and Limitation of Liability.

Neither the Debtor, nor any of his respective present or former employees, advisors, attorneys, or agents, will have or incur any liability to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Case, efforts to obtain confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, whether now known or hereafter discovered*, except for his gross negligence; willful, wanton, or intentional misconduct; or breaches of his fiduciary duties.*

### 13.7 General Injunction.

Except as otherwise expressly provided in this Plan, the Confirmation Order shall provide, among other things, that all parties in interest who have held, hold, or may hold Claims are permanently enjoined with respect to such Claims, on and after the Effective Date, from: a) commencing or continuing in any manner any action or other proceeding of any kind; b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order; c) creating, perfecting, or enforcing any encumbrance of any kind; d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due e) conducting any form of discovery; or f) otherwise engaging in harassment.  The forgoing injunction applies with regard to acts against the Debtor, his Property, his successors in interest, and the property of his successors in interest.

### 13.8 Interest.

Unless set forth specifically herein, whenever interest is to be computed under the Plan, interest will be simple interest and not compounded.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

**13.9    Additional Assurances.**

The Debtor and any party in interest holding Allowed Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

**13.10    Confirmation by Non-Acceptance Method.**

The Debtor hereby requests, if necessary, confirmation of the Plan pursuant to Code § 1129(b) with respect to any Impaired Class of Claims that does not vote to accept the Plan.

**13.11    Vesting.**

As of the Effective Date of the Plan, the Debtor shall retain and be vested with all of the Estate's Property. All Property shall be free and clear of all liens, Claims, and interests of Creditors and parties in interest except as specifically provided in this Plan.

**13.12    Successors and Assigns.**

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party in interest.

**13.13    Withdrawal of Plan.**

The Plan may be withdrawn by the Debtor at any time before entry of the Confirmation Order.

**13.14    Severability and Reformation.**

The Debtor intends to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if the Court determines that any Plan provision is contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan if it cannot be reformed, or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Debtor from modifying the Plan in accordance with and as set forth in the Plan. Pursuant to any ruling by the Court regarding the subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

**13.15   Prohibition Against Prepayment Penalties.**

If the Debtor so chooses, in his sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Debtor will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Court.

**13.16   Payment of Statutory Fees and Filing of Quarterly Reports.**

Before the Case is closed, all fees payable pursuant to 28 U.S.C. § 1980, as determined by the Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law.  The Debtor will file all quarterly reports of disbursements as required by the Bankruptcy Code.

**13.17   Governing Law.**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

**13.18   Special Tax Issues.**

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Code § 1146.

**13.19   Conflicts Between Plan and Confirmation Order.**

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

RESPECTFULLY SUBMITTED this 16th day of May, 2017.

*/s/ Jessie Paul Ogle*
Jessie Paul Ogle

-signatures continued on next page-

**APPROVED AS TO FORM AND CONTENT:**

**ALLEN BARNES & JONES, PLC**

By: _/s/ THA #11160_
    Thomas H. Allen
    Khaled Tarazi
    1850 N. Central Avenue, Suite 1150
    Phoenix, Arizona 85004
    Attorneys for Debtor